Frank J. BELINSKEY, Plaintiff
and Appellant,

v.

Sylvia HANSEN, Defendant
and Appellee.

Civ. No. 9380.

Supreme Court of North Dakota.

Dec. 19, 1977.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, and Sperry & Schultz, Bismarck, for plaintiff and appellant; argued by John Hjellum.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellee; argued by Warren H. Albrecht, Bismarck.

ERICKSTAD, Chief Justice.

The plaintiff, Frank J. Belinskey, appeals from a judgment entered on a jury verdict in the Burleigh County District Court and from the district court's order denying his motion for judgment notwithstanding the verdict or in the alternative for a new trial on the issue of damages. The jury found in favor of Belinskey and against Sylvia Hansen, defendant and appellee, and assessed damages in the sum of "none" dollars.

This case involves an action for personal injuries allegedly sustained by Belinskey as a result of a rear-end collision on July 13, 1974, in Bismarck, North Dakota. At about 9:30 a. m. on that day, Belinskey was operating his car in a westerly direction on Broadway and was stopped at a red light east of the intersection with ninth street. A car driven by Hansen ran into the rear end of Belinskey's car at a speed of five miles-per-hour or less. The jury found that Hansen was responsible for this accident and that finding has not been appealed.

The issues before us in this case are (1) whether or not the jury's verdict assessing no damages is supported by the evidence, (2) whether or not the trial court erred in denying the motions for judgment notwithstanding the verdict and for a new trial on the issue of damages, and (3) whether or not the trial court erred in its supplemental instructions to the jury.

At the trial, Belinskey basically relied on his testimony, his wife's testimony, Dr. John Cartwright's testimony, and several exhibits to establish his injury and resulting damages.

Belinskey testified that he received quite a jolt at the time of the accident at about 9:30 in the morning. He stated that his head felt like it was on the end of a banjo string. He testified that he walked back and talked to Hansen, bawling her out and telling her to be more careful. He got the license number of her car, but did not immediately report the accident. He testified that he continued on to a grocery store and did some shopping before he felt so dizzy his balance became bad. He went home and took some aspirin and laid down for a while. He then went to the police department and reported the accident. That evening he went to the emergency room of St. Alexius hospital and was seen by Dr. Lommen. X-rays were taken and he was given six shots in the neck and back muscles. Two days later Belinskey went to Mid-Dakota Clinic where he saw Dr. Lommen again. He complained of severe pain at this time at the base of his skull and down the shoulders on both sides. He continued to go to the Clinic frequently for treatment. Belinskey testified that he missed work as the result of his injury and that he could not do things that he could do before, such as boating, dancing, and driving long distances. He also testified that he now had trouble sleeping, that he spent great amounts of money for drugs to relieve the pain and that he had tried a neck brace and a vibrator to help relieve the pain.

Leona Belinskey, his wife, also testified as to what happened after the accident in regard to her husband's pain, his trips to the emergency room, and his subsequent visits to the Clinic for treatment. She also testified that her husband now has trouble sleeping, that he doesn't go boating, go dancing, or do carpentry work anymore. She further testified that his personality had changed since the accident and that he now has a short fuse and gets very irritable.

Dr. John Cartwright, who was Belinskey's family doctor, testified that Belinskey came to him for treatment following the accident. He testified that following the accident he or Dr. Lommen had seen Belinskey about 50 times and that Belinskey also had been to therapy sessions about 39 times. Exhibits were offered to support these visits and the charges involved. Dr. Cartwright went on to testify that on July 15,

he found limitation of motion in Belinskey's neck, paresthesia, and that Belinskey complained of pain in his neck. He testified that he did not believe Belinskey was trying to fool him with his complaints of pain. He also testified that in whiplash cases the amount of pain that a person has at the end of 18 months is what they are going to continue to have. Finally, he testified that he agreed with Dr. Kennedy's statement that the percentage of disability due to Belinskey's chronic painful neck to be no more than 10 percent.

Hansen, at the trial, basically relied on two things to establish that there was no injury and therefore no damage to Belinskey as a result of the accident. First, the evidence disclosed that only a minor accident occurred. Hansen testified that she was moving about five miles-per-hour at the time of impact and that she saw no damage to either car. (No evidence was submitted as to the value of the damage to Belinskey's car, but he did testify that a bumper guard was broken loose.) She stressed the fact that at the time of the accident, Belinskey did not consider the accident serious enough to report it to the police immediately. Also, although Belinskey's granddaughter, Robin, was a passenger in his car and Lori Hilde and Hansen's 1½-year-old son were passengers in her car, no one else in either car was injured.

The second and most important thing that Hansen relied on to show no injury and therefore no damage to Belinskey was the testimony of Dr. Roger Kennedy. Dr. Kennedy, a specialist in neurosurgery and neurology was the defense expert and had examined Belinskey on July 27, 1976. Dr. Kennedy's report was received in evidence as plaintiff's exhibit number 10. In that report, Dr. Kennedy discussed several complaints and health problems of Belinskey and then stated: "The only complaint that I can attribute to the accident is an exacerbation of neck pain which is on the basis of an aggravation of his degenerative disc disease in the cervical spine." Dr. Kennedy concluded his report with an estimate that the percent of disability due to Belinskey's chronic painful neck would be no more than 10 percent of his body.

At the trial, Dr. Kennedy testified that the only thing he could attribute to the accident was some persistent complaint of pain in Belinskey's neck. Dr. Kennedy went on to testify that this finding of pain was purely subjective and that he had to take Belinskey at his word on this. The following part of the transcript brings out this point quite well:

"Q. Now, on the last page, when you have been asked about your estimate as to disability rating, I will ask you again: Is that based wholly on the complaint of pain?

"A. That is correct.

"Q. It is not based on anything else?

"A. That's right.

If he did not have pain, I would feel this percentage of disability would be zero.

"Q. But you took him at his word with regard to pain?

"A. That's right.

"Q. So the finding is based solely on his complaint of pain, and you gave him the benefit of the doubt; is that true?

"A. That's right."

Also of special importance in Dr. Kennedy's testimony is the following statement found on page 160 of the transcript:

"Q. Now, Doctor, Mr. Belinskey has a history of complaint of one who has a serious whiplash or neck sprain type of injury, in view of this x-ray report, does he not?

"A. He does not."

Finally, Dr. Kennedy's response to a question asking about the previous medical treatment of Belinskey is important:

"A. Well, that's a tough question to answer. But it is obvious from reviewing the medical records, he was getting injections every two or three days of Vitamin B-12—one week four injections of Acthar, neither of which are accepted treatment for neck strain, by the way, and many of those treatments have nothing to do with it."

At the conclusion of the evidence, both sides moved for a directed verdict and both motions were denied. The judge then read the instructions to the jury and the jury retired. Later that evening, at 7:38 p. m., the judge called the attorneys for both sides to his chambers to discuss a message from the jurors. The jurors gave the judge the message which read: "We have come to a verdict—it is in 2 parts—the jury can't decide what form to fill out. Could we get some advice."

After some discussion off the record, the judge proposed the following supplemental instruction to the jury.

"1. If Sylvia Hansen is not responsible for the accident, fill out the verdict for the defendant.

"2. If Sylvia Hansen is responsible for the accident, fill out the verdict for Mr. Belinskey. In such event, you must determine the amount of damages, if any. If you determine there are no damages, insert the word 'None' in the verdict for Mr. Belinskey."

The attorney for Mr. Belinskey objected to the last sentence of that instruction, but that instruction was submitted to the jury with the following addition:

"3. In the event this supplemental instruction does not answer your question, please notify the bailiff of that fact in writing and submit to him a more specific question."

At 8:05 that evening, the jury verdict was read by the clerk of court, finding for the plaintiff and assessing damages in the sum of "none" dollars.

The judgment on that verdict was signed April 22, 1977. On May 9, 1977, Belinskey moved for judgment notwithstanding the verdict and in the alternative moved for a new trial on the issue of damages. These motions were denied by the district court in an order dated the 13th of May, 1977. Belinskey, on June 2, 1977, appealed to this court from the judgment and the order denying his motions.

The first issue we will deal with is whether or not the trial court erred in denying Belinskey's motion for judgment notwithstanding the verdict.

On a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party in whose favor the verdict was rendered, and such motion should not be granted unless the evidence shows that the moving party is entitled to a judgment on the merits as a matter of law. The motion must be denied unless the court finds that the evidence, viewed most favorably to the party against whom the motion is made, compels but one conclusion as to the verdict with which no reasonable man could differ. *Staiger v. Gaarder,* 258 N.W.2d 641 (N.D. 1977); *Lovas v. St. Paul Insurance Companies,* 240 N.W.2d 53 (N.D.1976); and *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973).

In this case, it cannot be said that Belinskey is entitled to a certain amount, or even that he is entitled to some amount of damages as a matter of law. There is much dispute in the evidence as to the amount of damages, if any, that should be awarded. It cannot be said that the evidence compels but one conclusion as to the amount of damages, if any, with which no reasonable man could differ.

In *Skjonsby v. Ness,* 221 N.W.2d 70 (N.D. 1974), we said in syllabus 7:

"7. Where the amount of damages claimed by either party is uncertain and based upon opinion, then it is entirely within the province of the jury to find the amount of damages. In such a case it is an invasion of the province of the jury for the court to direct the finding of a certain amount." 221 N.W.2d at 71.

That statement in *Skjonsby* is applicable to this case, and therefore we find no error in the trial court denying Belinskey's motion for judgment notwithstanding the verdict.

The next issue is whether or not the trial court erred in denying Belinskey's motion for a new trial on the issue of damages.

The standard for trial courts to apply in determining whether or not to grant a new trial was set out in *Cook v. Stenslie,* 251

N.W.2d 393 (N.D.1977). In syllabus 4, we said:

"4. A trial judge should set aside a jury verdict and grant a new trial only when, based on all the evidence and proceedings before him, his judgment tells him that the verdict was against the fair preponderance of the evidence." 251 N.W.2d at 394.

In *Cook v. Stenslie* we also said that:

"The power of the trial court to exercise its discretion on this motion must be clearly distinguished from our power on appeal, which is limited to a determination of whether grant of the motion was an abuse of discretion." 251 N.W.2d at 395.

*See also, Holten v. Amsden,* 161 N.W.2d 478 (N.D.1968) and *Bartholomay v. St. Thomas Lumber Co.,* 148 N.W.2d 278 (N.D.1967).

 Our court, in reviewing evidence upon appeal from an order denying a motion for a new trial, must do so in the light most favorable to the verdict. Our review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict. If there is, we are bound by the verdict even though there is conflicting evidence. *Vallejo v. Jamestown College,* 244 N.W.2d 753 (N.D.1976); *Kresel v. Giese,* 231 N.W.2d 780 (N.D.1975).

In this case, the trial court denied the motion for a new trial on the issue of damages. The relevant part of the district court's memorandum opinion concerning this order reads:

"The basis for the court's ruling was that the verdict of the jury was justified by the evidence. While the jury did find the defendant was responsible for the accident, there was considerable evidence presented by which the jury could have concluded the plaintiff was not injured in the accident. The Court's Opinion is that the jury verdict reflects precisely such a finding."

After reviewing the evidence in the light most favorable to the verdict, we are in agreement with the district court that there was considerable evidence to justify the verdict. The jury could have placed great weight on the fact that only a minor accident was involved. The jury could have chosen to believe Dr. Kennedy's testimony as opposed to Dr. Cartwright's testimony. Dr. Kennedy testified that the only thing that he could attribute to the accident was Belinskey's consistent complaints of neck pain. He emphasized that this finding of neck pain was based entirely on Belinskey's complaints of pain. The jury also could reasonably have chosen not to believe that Belinskey's pain, if indeed they believed he had any at all, was connected with this accident.

 It is important to note that the credibility of witnesses and weight to be given their testimony are questions of facts for the jury to determine. *Kresel v. Giese, supra; Waletzko v. Herdegen,* 226 N.W.2d 648 (N.D.1975). The trier of fact is not required to accept the uncontradicted testimony of an interested party. *Schwartzenberger v. Hunt Trust Estate,* 244 N.W.2d 711 (N.D.1976); *Larson v. Meyer,* 135 N.W.2d 145 (N.D.1965).

In viewing the evidence in the light most favorable to the verdict, and in leaving the question of the credibility of the witnesses to the triers of fact, as we must, we find that there was substantial evidence to sustain the verdict. We therefore hold that the denial of the motion for a new trial on the issue of damages was not an abuse of a discretion by the trial court.

 In so ruling, we are cognizant of the fact that a lesser showing is required to reverse an order denying a motion for a new trial than to reverse an order granting a new trial. *Cook v. Stenslie, supra; Wrangham v. Tebelius,* 231 N.W.2d 753 (N.D.1975); *Johnson v. Frelich,* 165 N.W.2d 343 (N.D.1969). However, in this case even the lesser standard was not met by Belinskey in that there was substantial evidence to sustain the verdict.

The final issue to be determined is whether or not the trial court erred in its supplemental instruction to the jury. Belinskey claims that the part of the instruction he objected to, "If you determine there are no

damages, insert the word 'None' in the verdict for Mr. Belinskey.", was in effect suggesting a verdict of no damages. He claims that that sentence may have influenced the jury to return the verdict of no damages, and that therefore the instruction was prejudicial to him.

■ In the past we have said that in passing on the correctness of jury instructions given by a trial court, we will consider the instructions which were given as a whole rather than consider individual instructions or portions of such instructions. *Bartholomay v. St. Thomas Lumber Co., supra; Larson v. Meyer, supra.*

■ In this case, looking at the instructions as a whole, we do not think the sentence objected to was prejudicial to Belinskey. The prior instructions had properly informed the jury that it was their duty to determine the amount of damages. The judge was also careful in instructing the jury that:

"I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest how you should decide any questions of fact submitted to you. If anything I have done or said has seemed to so indicate, you will disregard it and form your own opinion."

The supplemental instruction also must be examined in the context in which it was given. The supplemental instruction as mentioned earlier in this opinion was in response to a note from the jury requesting advice. The note said that the jury had come to a verdict in two parts, but that they could not decide what form to fill out. Within minutes of receiving the supplemental instruction, the jury delivered its verdict assessing damages in the sum of "none" dollars. It thus appears to us that the jury already had reached its verdict before the supplemental instruction was given to them, and that the supplemental instruction only clarified how they were to fill out the form.

We find that when the instructions are taken as a whole and in their proper context, the sentence objected to was not suggestive and did not influence the jury's verdict. Therefore, the sentence objected to in the supplemental instruction was not prejudicial to Belinskey.

The order of the district court denying the motion for judgment notwithstanding the verdict and the motion for a new trial and its judgment are therefore affirmed.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.