**Patricia D. McCOMMON, Plaintiff and Appellant,**

v.

**Lee Allen HENNINGS, Defendant and Appellee.**

**Civ. No. 9613.**

Supreme Court of North Dakota.

Aug. 2, 1979.

David E. Nething, Jamestown, for plaintiff and appellant.

Carlton J. Hunke, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

This is an appeal by the plaintiff, Patricia D. McCommon, from the order of the Stutsman County district court dated October 18, 1978, denying her "Motion for a New Trial on Sole Issue of Damages or in the Alternative Motion for Judgment of Damages Notwithstanding the Verdict." We affirm.

This case involved an action for personal injuries allegedly sustained by McCommon as a result of a rear-end collision on July 2, 1974. At approximately 10:50 a. m. on that day, McCommon, while driving her 1971 Pontiac automobile, was proceeding in a northerly direction on Second Avenue, N.W. She slowed and stopped her vehicle behind three other vehicles which were stopped at the Fifth Street, N.W., intersection. Her vehicle was then struck in the rear by a tractor-mower unit driven by the defendant, Lee Allen Hennings. The jury determined that Hennings was responsible for the accident. No appeal has been taken from that determination. However, the jury assessed damages against Hennings in the sum of "none" dollars, and from this determination McCommon has appealed.

On appeal, McCommon asserts that the jury verdict assessing no damages was contrary to the evidence and that the trial court erred in denying her motion for a new trial on the issue of damages or, in the alternative, for a judgment of damages notwithstanding the verdict.

Our court, in reviewing evidence upon appeal from an order denying a motion for new trial, must do so in the light

most favorable to the verdict, and such review is limited to a consideration of whether there is substantial evidence to sustain the verdict. *Belinskey v. Hansen*, 261 N.W.2d 390 (N.D.1977). This court will not reverse a trial court's denial of a motion for new trial unless such denial constitutes an abuse of discretion by the trial court. *Belinskey v. Hansen, supra.*

■ On a motion for judgment notwithstanding the verdict, the evidence must also be viewed in the light most favorable to the verdict, and such motion shall not be granted unless the evidence shows that the moving party is entitled to judgment as a matter of law. The motion must be denied unless the court finds that the evidence, viewed most favorably to the party against whom the motion is made, compels but one conclusion as to the verdict with which no reasonable man could differ. *Staiger v. Gaarder*, 258 N.W.2d 641 (N.D.1977).

To support her assertion of injury and claim for damages against Hennings, McCommon offered her own testimony, the testimony of her husband, Donald McCommon, and the testimony of Dr. Robert Ralph Ivers, a neurological specialist practicing in Fargo.

McCommon testified as follows: Following the accident, during the afternoon of the same day, she secured an appointment with Dr. John A. Beall because she "had a terrific headache and pains across my shoulders." Dr. Beall prescribed medication, gave her a cervical collar to wear, and ordered that X-rays be taken. McCommon saw Dr. Beall again on July 4, at which time he prescribed a different medication "because of the headaches." Later that same month Dr. Beall prescribed a head-halter traction set for McCommon "to pull the muscles in the back of the neck." According to McCommon, none of the treatments alleviated her headaches or the pain in her neck and shoulders. On her fourth appointment with Dr. Beall, he asked her if she would like to see a neurologist in Fargo. She responded affirmatively and he referred her to Dr. Ivers. During McCommon's first appointment with Dr. Ivers, on

September 18, 1974, he told her to continue using the head-halter traction set, to add heat and massage treatments, and to perform certain exercises. At a later appointment, on January 28, 1977, Dr. Ivers also prescribed for McCommon an electrode stimulator with "electrodes that connect to the back of the neck and on the shoulders" for the purpose of relieving pain.

McCommon's husband, Donald, testified that since the accident McCommon complained that she had continual pain and that "you can tell in the way she does things or tries to do things that she is obviously having pain or difficulties." He testified that she also complained of having headaches and that since the accident she was having difficulty sleeping. He further testified that she doesn't seem to be the same person physically and that "she isn't able to do the things there that she normally did as often or as frequently as she did."

Dr. Ivers testified that upon examining McCommon it was his clinical impression that she had a sprain or musculigmentis injury to her cervical spine and upper dorsal spine, i. e., that she had a tearing of the ligament and muscles located in the neck and upper-back region. He further testified that in his opinion McCommon had a ten percent permanent-partial disability based on the function of her neck.

To refute McCommon's assertion of injury and claim for damages, Hennings relied primarily on the cross-examination of McCommon and Dr. Ivers as well as her past medical records. The evidence, viewed in the light most favorable to the verdict assessing no damages against Hennings, reveals, inter alia, the following pertinent facts:

(a) At the time of the rear-end collision the tractor-mower unit was traveling at a speed of less than 16 miles per hour.

(b) McCommon's automobile was not moved forward upon impact with the tractor-mower.

(c) McCommon's granddaughter, who was a passenger in McCommon's auto-

mobile at the time of the collision, was not injured, nor was Hennings, the driver of the tractor-mower, injured.

(d) As a result of the collision, McCommon did not sustain any bruises, cuts, or scratches.

(e) On direct examination McCommon testified that since the accident she was unable to golf more than once a week. On cross-examination, when confronted with the golf records, McCommon conceded that since the accident she had purchased season golf tickets and that there were times when she golfed more than once a week.

(f) McCommon is a nervous person.

(g) During 1966, McCommon was given a prescription of codeine for splitting headaches.

(h) During 1973, McCommon was given a prescription of valium for headaches, nervousness, and dizziness.

(i) McCommon has a history of low blood pressure causing blackout spells, for which she obtained consultation at the Mayo Clinic.

(j) After the accident McCommon had full range of motion of her cervical spine.

(k) There was no weakness of McCommon's neck muscles, no atrophy, and no abnormal movements. Her neck muscles were able to carry out normal functions.

(l) According to Dr. Ivers's own testimony on cross-examination, his determination that McCommon had a ten percent disability was based to a large extent, upon McCommon's subjective complaints.

(m) McCommon's neck and back pains could possibly have been the result of a natural deterioration of the neck and back muscles due to the aging process.

(n) X-rays of McCommon's spine were negative (i. e., no abnormality).

(o) McCommon could have been experiencing menopausal melancholia causing complaints of headaches, fatigability, lack of interest, irritability, and tension or tightness in the neck area.

(p) McCommon could have been experiencing "empty-nest" syndrome causing somatic complaints of headaches and neck and back pain.

(q) McCommon could have been experiencing continuing emotional difficulties because of a hysterectomy performed during 1961, resulting in certain neurotic or somatic complaints.

(r) Dr. Ivers testified that he would not be surprised if McCommon's doctors concluded that there was a large functional element to her complaints (i. e., complaints resulting from emotional tension or anxiety).

■■ We have carefully examined the entire record in this case, including the foregoing evidence as set forth in this opinion, and it is evident to us that the injury, if any, sustained by McCommon as a result of the accident is uncertain and based upon opinion. In such a case it is entirely within the province of the jury to find the amount of damages, if any, and it would be an invasion of the jury's function for the court to direct the finding of a certain amount. *Skjonsby v. Ness*, 221 N.W.2d 70 (N.D.1974). The credibility of witnesses and the weight to be given to their testimony are questions for the jury to determine. *Belinskey v. Hansen*, 261 N.W.2d 390 (N.D.1977).

The instant case has important factual similarities to the *Belinskey* case, in which this court upheld a jury verdict assessing no damages against the defendant driver. In *Belinskey*, as in the instant case, the accident was a relatively minor one in which only the plaintiff alleged injuries; no one else involved in the accident was injured. Here, as in *Belinskey*, the doctor's conclusion that a permanent-partial disability existed was based primarily on the plaintiff's subjective complaints of pain.

Evidence was also introduced to support a determination that McCommon's alleged

pain and injury were caused by factors other than the accident, such as low blood pressure, menopausal melancholia, "empty-nest" syndrome, tense-type personality, and the natural aging process.

McCommon cites the case of *Tipsword v. Johnson*, 59 Ill.App.3d 834, 17 Ill.Dec. 192, 376 N.E.2d 85 (1978), decided by the appellate court of Illinois. In *Tipsword*, the appellate court reversed a jury verdict in which the plaintiffs were awarded no damages and the case was remanded with directions to hold a new trial on the issue of damages. Certain evidence introduced in *Tipsword* distinguishes it from this case. In *Tipsword*, the impact of the rear-end collision forced the plaintiffs' vehicle off the pavement and caused $1,300 in damage to the vehicle. Both persons in the vehicle testified that after impact they were "trembling and experienced pain." They were taken to a hospital emergency room and examined. The examining doctor concluded that both had suffered inertia strain of the neck and he prescribed medication for them. In determining that the jury verdict awarding no damages was erroneous, the appellate court of Illinois stated:

> "Clearly, an impact between automobiles of the force sustained here would justify a prudent person involved in such an accident to seek medical advice. Each plaintiff, as a result of seeking medical advice, incurred expenses for a physical examination, X-rays, and a prescription for medication. . . . We conclude that the plaintiffs are entitled at least to some damages." 59 Ill.App.3d at 837, 17 Ill. Dec. at 194–195, 376 N.E.2d at 87–88.

Here, unlike the *Tipsword* case, the impact upon collision was relatively minor. There was substantial evidence from which the jury could determine that even McCommon's initial medical examination after the accident was not necessitated by the minor impact of the collision.

■ Based upon a careful examination of the entire record, we must conclude that there was substantial evidence to sustain the jury verdict awarding no damages. Consequently, the trial court did not abuse its discretion in denying McCommon's motion for a new trial on the issue of damages.

Furthermore, the evidence in this case with respect to damages does not compel but one conclusion—with which no reasonable man could differ—that damages are to be awarded. Thus McCommon is not entitled, as a matter of law, to some amount of damages.

Accordingly, the order of the trial court denying McCommon's motion for a new trial on the issue of damages or, in the alternative, for a judgment of damages notwithstanding the verdict, is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON, and SAND, JJ., concur.