2006 ND 111

Dan CARPENTER, Plaintiff, Appellant and Cross–Appellee

v.

Mark ROHRER, personally and in his professional capacity doing business as Mark Rohrer, LICSW; Defendant, Appellee and Cross–Appellant

and

Darveaux, Eaton, & Associates; Dion X. Darveaux, Timothy T. Eaton, and Thomas J. Eick, each in their professional capacities, Defendants and Appellees.

No. 20050127.

Supreme Court of North Dakota.

May 17, 2006.

 
 

 
 

 
 

Lynn M. Boughey (argued), Boughey Law Firm, Minot, ND, for plaintiff, appellant, and cross-appellee.

Michael C. Waller (argued), Fleck, Mather & Strutz, Bismarck, ND, for defendant, appellee, and cross-appellant Mark Rohrer.

Steven A. Storslee (argued), Storslee Law Firm, P.C., Bismarck, ND, for defendants and appellees Darveaux, Eaton, & Associates, Dion X. Darveaux, and Timothy T. Eaton.

James S. Hill (argued) and Paul R. Sanderson (on brief), Zuger Kirmis & Smith, Bismarck, ND, for defendant and appellee Thomas J. Eick.

KAPSNER, Justice.

[¶ 1] Dan Carpenter appealed from an amended judgment entered upon a jury verdict awarding him no damages and no costs from the malpractice of social worker Mark Rohrer; a February 10, 2005 judgment in favor of Thomas Eick; and a February 16, 2005 judgment in favor of Darveaux, Eaton, & Associates, Dion Darveaux, and Timothy Eaton. Only a partial transcript was filed by Carpenter. Rohrer cross-appealed claiming he was entitled to costs because he was the prevailing party at trial. Rohrer also filed a motion to strike certain information included in Carpenter's brief on appeal. We affirm the February 10, 2005 and February 16, 2005 judgments, reverse the amended judgment, and remand with instructions to re-instate the February 25, 2005 judgment in favor of Carpenter. We grant Rohrer's motion to strike. We award costs on appeal in favor of appellees and award an additional $350 in costs in favor of appellees as a sanction for Carpenter's failure to comply with the North Dakota Rules of Appellate Procedure.

I

[¶ 2] Carpenter, a homosexual man with a history of being abused, sought the professional services of Rohrer as a licensed social worker. During therapy sessions, Rohrer would occasionally hug Carpenter and say "love you, man" to him. The parties dispute the exact nature of the hugs and the context in which the words "love you" were used. Rohrer believed the hugs and words "love you" were used in an appropriate manner. Carpenter found Rohrer's actions inappropriate and sued him for professional malpractice. Carpenter also sued Darveaux, Eaton & Associates ("the association"), psychologists Dion Darveaux and Timothy Eaton, and psychiatrist Thomas Eick. These parties were included under various agency and negligence theories. Rohrer rented office space from the association, and Carpenter believed the association and the individuals in the association should be held liable for the acts of Rohrer. Psychiatrist Eick also treated Rohrer and Carpenter asserted Eick had a duty to supervise Rohrer. The district court judge dismissed all the parties except for Rohrer at the close of plaintiff's case.

[¶ 3] Following a week-long jury trial, a jury found Rohrer to be 30% at fault for Carpenter's injuries. Carpenter was found to be personally responsible for 20% of his injuries, and other parties or persons not listed were found to be 50% at fault for Carpenter's injuries. While the jury believed Rohrer to be partially at

fault, the jury awarded Carpenter zero dollars for his injuries.

[¶ 4] Carpenter filed this appeal raising the following four main issues: (1) the jury verdict was inconsistent and he should receive a new trial; (2) irregularity in the proceedings—a juror being dismissed for reading a law book—requires a new trial; (3) the district court abused its discretion in refusing to allow a psychologist to testify to a psychiatrist's standard of care; and (4) the psychologists Dr. Darveaux and Dr. Eaton, the psychiatrist Dr. Eick, and the association, were improperly dismissed under N.D.R.Civ.P. 50. Carpenter argues the dismissal of the association, Dr. Darveaux, Dr. Eaton, and Dr. Eick, was improperly granted because an ostensible agency relationship existed between Rohrer and Drs. Darveaux and Eaton, Medicaid rules required Dr. Eick to supervise Rohrer, and the statute of limitations had not run on any party because of the agency relationships and a continuing tort theory.

[¶ 5] Rohrer argues the verdict was consistent and irregularities do not require a new trial. He also cross-appealed arguing that he should be entitled to costs because he was the prevailing party at trial. The association and the individual psychologists and psychiatrist argue they were properly dismissed from the case. Carpenter filed a partial transcript with this Court. All appellees have objected to this incomplete transcript. After Carpenter filed his brief on appeal, Rohrer filed a motion to strike certain information that was included in Carpenter's brief but was not in the evidence presented to the jury.

## II

■ [¶ 6] Carpenter argues the jury verdict was inconsistent because the special verdict form stated Rohrer was the proximate cause of Carpenter's damages, but the jury awarded no damages to Car-

penter. The relevant portion of the special verdict form states:

3. Was the fault of Mark Rohrer a proximate cause of the plaintiff Dan Carpenter's damages?

Answer: Yes × No ___

. . .

9. What amount of money, if any, will fairly compensate plaintiff Dan Carpenter for:

a. Past economic damages $ 0

b. Past non-economic damages $ 0

[¶ 7] Carpenter argues this verdict is inconsistent because the jury found Carpenter had been damaged, but then provided the value of those damages as zero. He claims if the value of his damages was really zero, then he was not really damaged. Rohrer argues the special verdict was not inconsistent. Rohrer believes the jury must have concluded Carpenter failed to prove the amount of his damages by a preponderance of the evidence. Rohrer claims Carpenter did not present any credible evidence on damages and thus this verdict is proper.

■ [¶ 8] We uphold special jury verdicts whenever possible, setting them aside only if it is shown they were perverse and clearly contrary to the evidence. *Fontes v. Dixon*, 544 N.W.2d 869, 871 (N.D.1996). We reconcile a verdict by examining both the law of the case and the evidence to determine whether the verdict is logical and probable. *Barta v. Hinds*, 1998 ND 104, ¶ 6, 578 N.W.2d 553. The presumption on appeal is that jurors do not intend to return conflicting answers. 75B Am.Jur.2d *Trial* § 1853 (1992). When a party challenges an award of damages, we generally defer to a jury verdict because damages are in the province of the jury and the matter rests largely in the jury's sound discretion. *Vallejo v. Jamestown College*, 244 N.W.2d 753, 759 (N.D.

1976). There is no certain or definite rule by which the amount of damages can be measured, and each case must be determined on its merits. *Id.*

[¶ 9] Carpenter cites *Haley v. Dennis*, 2004 ND 96, 679 N.W.2d 263 and *Moszer v. Witt*, 2001 ND 30, 622 N.W.2d 223, for the proposition that if a jury's special verdict form provides for monetary damages, but provides that a party is both negligent and not negligent, the verdict form is inconsistent and the case should be remanded for a new trial. But these cases are not dispositive of the issue in this case. The question in this case is whether a jury's verdict of no amount of monetary damages, when a defendant is found to be the proximate cause of the plaintiff's damages, renders a jury's verdict inconsistent.

[¶ 10] We addressed an analogous issue in *McCommon v. Hennings*, 283 N.W.2d 166 (N.D.1979). In *McCommon*, a jury determined Hennings "was responsible for the accident" between McCommon's car and Henning's tractor-mower, but awarded damages to McCommon in the "sum of 'none' dollars." *Id.* at 167. McCommon asserted the jury verdict assessing no damages was contrary to the evidence and requested a new trial. *Id.* We held that the trial court did not abuse its discretion in denying a new trial on damages. *Id.* at 170. In affirming the denial of a new trial, we reviewed the testimony on damages and concluded the injuries were "uncertain and based upon opinion" and in such a situation having a court determine the amount of damages "would be an invasion of the jury's function." *Id.* at 169; *see also Belinskey v. Hansen*, 261 N.W.2d 390, 392 (N.D.1977) (affirming denial of new trial where minor rear-end collision with claimed serious injuries and disability resulted in jury finding that other driver negligently caused collision but jury awarded nothing for damages).

[¶ 11] Conversely in *Massey–Ferguson Credit Corp. v. Orr*, 420 N.W.2d 1 (N.D. 1988), this Court reversed and remanded a special jury verdict form that included the following findings: a security agreement existed between a debtor and a secured creditor; no agreement existed that would waive a deficiency judgment upon repossession of collateral; and a finding of no damages. *Id.* at 2. The record clearly showed a deficiency of nearly $20,000 existed. *Id.* We concluded the evidence did not support the verdict and the damages verdict was so inadequate that a reversal was required. *Id.*

[¶ 12] The common thread in our cases is the adequacy of the evidence of damages. If an award of no monetary damages is completely unsupported by the evidence, as in *Orr*, a new trial on damages would be proper. But if an award of no damages is supported by the evidentiary record, a perceived inconsistency does not require a reversal. *See McCommon*, 283 N.W.2d at 170; *Belinskey*, 261 N.W.2d at 392.

[¶ 13] In this case, Carpenter has not provided us with a transcript of the damages section of the trial. It is thus impossible to determine if the jury determination on damages was unsupported by the evidence. We have often warned that an appellant has the duty to provide this Court with a transcript sufficient to allow "a meaningful and intelligent review of the alleged error." *Sabot v. Fargo Women's Health Org., Inc.*, 500 N.W.2d 889, 892 (N.D.1993) (quoting *Bye v. Elvick*, 336 N.W.2d 106, 109 (N.D.1983)). "An appellant 'assumes the consequences and the risk for the failure to file a complete transcript.'" *City of Fargo v. Erickson*, 1999 ND 145, ¶ 16, 598 N.W.2d 787 (quoting *Sabot*, 500 N.W.2d at 892). "If the record

on appeal does not allow for a meaningful and intelligent review of alleged error, we will decline review of the issue." *Sabot*, at 892 (quoting *Lithun v. DuPaul*, 447 N.W.2d 297, 300 (N.D.1989)).

[¶ 14] There was a week-long trial in this case. On appeal, Carpenter furnished this Court with less than 250 pages of the trial transcript. Needless to say, our review is severely hampered on appeal. The limited facts we do have on Carpenter's damages appear in a district court order stating: "Carpenter testified that money was not important to him .... it appears the Jury took him at his word." The failure to file a transcript relating to the damages portion of the trial means Carpenter cannot demonstrate the verdict was inconsistent with the evidence. Thus, the lack of an evidentiary record precludes us from determining that the jury verdict requires a new trial.

### III

[¶ 15] Carpenter claims he should receive a new trial because a juror was dismissed for reading a law book in the hallway during a recess from the trial. Carpenter did include a transcript of the dismissal of the juror. The record shows the district court dismissed the juror on its own motion. The bailiff discussed how this incident happened and apologized, assuring the incident would not happen again. An alternate juror replaced the dismissed juror.

[¶ 16] Carpenter's attorney did not object, nor has he claimed on appeal that other jurors were aware of this occurrence or adversely influenced by the dismissed juror reading the law book. We have repeatedly declined to address issues raised for the first time on appeal. *Chapman v. Chapman*, 2004 ND 22, ¶ 7, 673 N.W.2d 920. Carpenter has failed to demonstrate any reversible error from the ac-

tions of the district court, and we have similarly found none.

### IV

[¶ 17] Carpenter argues the district court abused its discretion in refusing to allow Dr. Stephen Podrygula, a psychologist, to testify about the standard of care owed by Dr. Eick, a psychiatrist, to Carpenter. He claims Dr. Podrygula had the expertise to provide expert opinions relating to other mental health professionals, including psychiatrists. Dr. Podrygula stated in an affidavit that he was competent to testify on the basic counseling issues that were disputed in this case, and the educational differences that differentiate a psychologist from a psychiatrist were not at issue. Dr. Eick asserted that as a psychologist, Dr. Podrygula was not qualified to give expert testimony relating to a psychiatrist. In the district court's "Order on Motions in Limine," the court precluded Dr. Podrygula from testifying about all "matters involving medication," billing for Medicaid/Medicare on behalf of a social worker, and the "standard of care for a psychiatrist through Medicaid rules, regulations, or memorandum."

[¶ 18] A witness's qualification to testify as an expert is left to the sound discretion of the trial court and is not reversed on appeal absent an abuse of discretion. *Langness v. Fencil Urethane Systems, Inc.*, 2003 ND 132, ¶ 9, 667 N.W.2d 596. It is incumbent upon a district court to ascertain whether proposed expert testimony is reliable and relevant. *Id.*

[¶ 19] Dr. Podrygula's testimony was not provided on appeal. The pretrial limits on Dr. Podrygula's testimony were within the district court's discretion. From the record we have, we do not know if Carpenter offered, elicited, or tried to

elicit a broader expert opinion from Podrygula at trial. We do not know if the district court refused to allow Dr. Podrygula to testify or merely limited his testimony pursuant to the pretrial order. From the exiguous record we have before us, it is impossible to determine what happened below. Thus, we decline to address this issue on appeal.

## V

[¶ 20] Carpenter argues psychologists Darveaux and Eaton, psychiatrist Eick, and the association of Darveaux, Eaton & Associates, were improperly dismissed under N.D.R.Civ.P. 50. Carpenter claims judgment as a matter of law was improper because an ostensible agency or partnership relationship existed between Rohrer and the members in the association, Medicaid rules imposed a duty to supervise Rohrer on Dr. Eick, and the statute of limitations had not run on any party because a continuing tort theory applies.

[¶ 21] A district court's decision to grant a motion, under N.D.R.Civ.P. 50, for judgment as a matter of law is fully reviewable on appeal. *Estate of Dion,* 2001 ND 53, ¶ 33, 623 N.W.2d 720. In determining if the evidence is sufficient to create an issue of fact, a district court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence supporting the verdict. *Case Credit Corp. v. Oppegard's, Inc.,* 2005 ND 141, ¶ 5, 701 N.W.2d 891. A judgment as a matter of law is appropriate if the evidence leads to but one conclusion about which there can be no reasonable difference of opinion. *Id.* It is under this rubric that we review the district court's decision to dismiss the doctors and the association as a matter of law.

## A

[¶ 22] Carpenter claims, under a theory of ostensible agency or ostensible partnership, the association and the individuals in the association, Darveaux and Eaton, should be held liable for the acts of Rohrer.

[¶ 23] Under a theory of ostensible agency, a party must show "the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him." N.D.C.C. § 3–01–03. An apparent or ostensible agency must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal. *Krank v. A.O. Smith Harvestore Products, Inc.,* 456 N.W.2d 125, 128 (N.D.1990). Agency is never presumed and, if an agency relationship is denied, the party alleging agency must establish it by clear and convincing evidence. *Hector v. Metro Centers, Inc.,* 498 N.W.2d 113, 118 (N.D.1993); *see also Argabright v. Rodgers,* 2003 ND 59, ¶ 6, 659 N.W.2d 369.

[¶ 24] In *Napoleon Livestock Auction v. Rohrich,* 406 N.W.2d 346, 360 (N.D.1987), we identified the elements of ostensible partnership as follows:

> As to third persons, there may be an 'ostensible partnership' whereby persons who are not in fact partners may be held liable as such by reason of their conduct if the conduct justifies a third party in believing that the partnership exists and justifies him in relying on that belief in acting to his detriment. But to establish an ostensible partnership, the person claiming the existence of it must prove that the persons to be charged as partners either held themselves out to be

partners or knowingly or negligently permitted others to do so. Circumstantial evidence to establish such an ostensible partnership must be inconsistent with any other reasonable hypothesis than the existence of a partnership.

*Id.* (quoting *Schlichenmayer v. Luithle,* 221 N.W.2d 77, 82 (N.D.1974)).

[¶ 25] Carpenter does not claim an express partnership or agency relationship existed between Rohrer and the association or its members. To determine whether there was an ostensible agency, we must look to Dr. Darveaux and Dr. Eaton's actions to decide whether there is clear and convincing evidence that their conduct or communications caused Carpenter to reasonably believe there was an agency relationship. To determine whether there was an ostensible partnership relationship, Carpenter must show Dr. Darveaux and Dr. Eaton either held themselves out to be partners of Rohrer or permitted others to do so.

[¶ 26] Again, our review of this issue is limited by the partial transcript we have before us. Without citation to the record and thus in violation of N.D.R.App.P. 28(b)(6), Carpenter makes certain allegations to support the ostensible agency: the association advertised as a full service mental health group, the association provided billing services to Rohrer, and processed Rohrer's receipts keeping a portion of those receipts. However, the full evidentiary record on these allegations is not before us.

[¶ 27] While no transcript of Carpenter's testimony was provided to this Court, Carpenter did state in an earlier deposition that he understood Rohrer was an independent social worker and only rented space from the association. In the limited portion of Dr. Darveaux and Dr. Eaton's testimony that we do have, it is clear that they did not knowingly hold themselves

out as partners of Rohrer. From the record before this Court, we cannot determine by clear and convincing evidence that Dr. Darveaux and Dr. Eaton's actions caused Carpenter to believe there was an agency relationship between Rohrer and the association, or that there was a partnership between Rohrer and the psychologists.

B

■■■ [¶ 28] Carpenter argues Dr. Darveaux, Dr. Eaton, Dr. Eick, and the association were improperly dismissed on statute of limitations grounds. Carpenter apparently concedes this case was outside of the statute of limitations period for all individuals except Rohrer. He argues this Court should adopt a continuous treatment tort rule for all medical malpractice cases, and, under agency principals and a continuous tort theory, the acts of Rohrer should be imputed to all other defendants. Thus, he argues the statute of limitations should not be tolled until the latest tort is committed by any individual in a group.

■■■ [¶ 29] The continuous treatment doctrine is premised upon an ongoing and continuous relationship between patient and physician. *Hoffner v. Johnson,* 2003 ND 79, ¶ 31, 660 N.W.2d 909. It is the special trust relationship between patient and physician that may make discovery of a claim difficult and the continuous treatment rule necessary. *Id.*

Under the "continuous treatment" doctrine, the running of the statute of limitations is tolled when a course of treatment that includes wrongful acts or omissions has run continuously and is related to the original condition or complaint. Stated another way, the statute does not commence running until treatment by the physician or surgeon has terminated, where the treatment is con-

tinuing and of such nature as to charge the physician or surgeon with the duty of continuing care and treatment which is essential to recovery until the relationship ceases. However, where the medical services rendered are intermittent, rather than continuous, the statute of limitations under a medical malpractice statute will begin to run from the date of the alleged individual incident of malpractice and not from the date of the last services rendered.

61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 299 (2002).

[¶ 30] We have not adopted the continuous treatment rule in medical malpractice cases, although we have alluded to the rule in several of our past decisions. *See, e.g., Hoffner*, 2003 ND 79, ¶ 34, 660 N.W.2d 909; *Schanilec v. Grand Forks Clinic, Ltd.*, 1999 ND 165, ¶ 21, 599 N.W.2d 253; *Wheeler v. Schmid Lab., Inc.*, 451 N.W.2d 133, 139 (N.D.1990); *Froysland v. Altenburg*, 439 N.W.2d 797, 799–801 (N.D.1989).

[¶ 31] In this case, the district court found the summons and complaint were served on Rohrer, Dr. Darveaux, Dr. Eaton, Dr. Eick, and the association on August 30, 2001. There is a two-year statute of limitations in medical malpractice actions under N.D.C.C. § 28–01–18(3). Rohrer treated Carpenter in September 1999; thus, he was inside the limitations period. But Dr. Eick's last professional visit with Carpenter was on August 27, 1999, outside of the statute of limitations period. There was no treatment with Dr. Eick inside the two-year limitations period. Thus, even if we were to adopt the continuous treatment rule, Carpenter's claim against Eick would not fall within the rule.

[¶ 32] Dr. Darveaux and Dr. Eaton did not have a doctor-patient relationship with Carpenter and could only be reached through agency principles. Having concluded Carpenter failed to establish the existence of an ostensible agency, we determine the district court did not err in dismissing Dr. Darveaux, Dr. Eaton, or the association as a matter of law. Because the district court had adequate grounds to dismiss the parties under N.D.R.Civ.P. 50, we decline to address Carpenter's other arguments for being improperly dismissed.

## VI

[¶ 33] Rohrer has cross-appealed claiming he should be entitled to costs because he was the prevailing party at trial. The district court initially awarded costs to Carpenter as the prevailing party. Rohrer objected to the award of costs. Subsequently, the district court determined that neither party should be awarded costs as neither party was the prevailing party.

[¶ 34] Determining who is a prevailing party for an award of disbursements under N.D.C.C. § 28–26–06 is a question of law, subject to de novo review, while the question of the amount to be allowed for disbursements and costs is one of fact, subject to an abuse of discretion standard. *Nesvig v. Nesvig*, 2006 ND 66, ¶ 34, 712 N.W.2d 299. The determination of who is a prevailing party entitled to recover necessary disbursements under N.D.C.C. § 28–26–06 is based upon success on the merits, not damages. *Dowhan v. Brockman*, 2001 ND 70, ¶ 11, 624 N.W.2d 690 (citing *Lemer v. Campbell*, 1999 ND 223, ¶ 9, 602 N.W.2d 686). If opposing litigants each prevail on some issues, there may not be a single prevailing party for whom disbursements may be taxed. *Dowhan*, at ¶ 11. A prevailing party is one "in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Black's Law Dictionary* 1154 (8th ed.2004).

[¶ 35] "Generally, the prevailing party to a suit, for the purpose of determining who is entitled to costs, is the one who successfully prosecutes the action or successfully defends against it, prevailing on the merits of the main issue, in other words, the prevailing party is the one in whose favor the decision or verdict is rendered and the judgment entered." *Dowhan v. Brockman*, 2001 ND 70, ¶ 11, 624 N.W.2d 690.

[¶ 36] A judgment dated February 25, 2005 was originally rendered in favor of Carpenter against Rohrer for Carpenter's costs and disbursements in the amount of $2,648.00. An amended judgment vacated the taxation of costs against Rohrer determining that neither Carpenter or Rohrer was the prevailing party. This is contrary to our law. "A prevailing party is one 'in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Dowhan*, 2001 ND 70, ¶ 11, 624 N.W.2d 690 (citing *Black's Law Dictionary* 1145 (7th ed.1999)). The jury verdict found the fault of Rohrer was a proximate cause of Carpenter's damages. Thus, to be consistent with our past case law, costs should be awarded to Carpenter as the prevailing party because the February 25, 2005 judgment was rendered in his favor.

## VII

[¶ 37] Rohrer filed a motion to strike certain information in Carpenter's brief on appeal. In his motion, Rohrer argues Carpenter's reference to information that was excluded through a motion in limine and not available to the jury, should not be considered by this Court and that he should be awarded costs for bringing the motion. Carpenter is not appealing the evidentiary ruling which excluded the information.

[¶ 38] We agree with Rohrer that the inclusion of the information in Carpenter's brief was inappropriate and irrelevant to any issue presented on appeal. But the information included in the brief was referenced in the record below; Rohrer brought a motion in limine explicitly to exclude its introduction to the jury. Information included in the record can be referenced on appeal when it relates to an issue on appeal. Because the information has not been shown to be pertinent to any issue on appeal and because the trial court specifically excluded it from jury consideration, we grant Rohrer's motion to strike the unnecessary references.

[¶ 39] Further, the stricken information was asserted as fact in Carpenter's brief, without a citation to the record. The entire fact section of Carpenter's brief is completely devoid of any citation to the record. Judges are not "obligated to engage in unassisted searches of the record." *Vandeberg v. State*, 2003 ND 71, ¶ 7, 660 N.W.2d 568. Rule 28(b)(6), N.D.R.App.P., requires the statement of facts to have appropriate references to the record. Under N.D.R.App.P. 13, this Court has the authority to "take appropriate action against any person failing to perform an act required by rule or court order." We apply sanctions sparingly, when it is necessary to protect the appellate process from abuse. *Schmidt v. Schmidt*, 325 N.W.2d 230, 232 (N.D.1982). The determination to impose sanctions for noncompliance with the rules rests with the discretion of this Court. *Hurt v. Freeland*, 1997 ND 194, ¶ 13, 569 N.W.2d 266. We award appellees $350 in costs as a sanction for non-compliance with the North Dakota Rules of Appellate Procedure.

## VIII

[¶ 40] We affirm the February 10, 2005 and February 16, 2005 judgments, reverse the amended judgment, and remand with

instructions to reinstate the February 25, 2005 judgment in favor of Carpenter. We grant Rohrer's motion to strike. We award costs to the appellees for the appeal and further award $350 in additional costs as a sanction against Carpenter.

[¶ 41] GERALD W. VANDE WALLE, C.J., JOHN C. McCLINTOCK, JR., D.J., DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.

[¶ 42] The Honorable JOHN C. McCLINTOCK, JR., D.J., sitting in place of MARING, J., disqualified.