# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 113

Chenille Condon, 

Plaintiff and Appellee

v.

St. Alexius Medical Center and
Allen Michael Booth, M.D.,

Defendants and Appellants

No. 20180297

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Justice.

Thomas J. Conlin (argued), Stacy D. Stennes (appeared), Minneapolis, MN, and Robert V. Bolinske Jr. (on brief), Bismarck, ND, for plaintiff and appellee.

Tracy Vigness Kolb (argued), Bismarck, ND, and Rodger A. Hagen (on brief), Minneapolis, MN, for defendants and appellants.

Matthew A. Sagsveen, Office of Attorney General, Bismarck, ND, for amicus curiae State of North Dakota.

Courtney Koebele, Bismarck, ND, Mark A. Behrens and Cary Silverman, Washington, DC, for amicus curiae North Dakota Medical Association.

Timothy Q. Purdon, Bismarck, ND, and Glenn A. Danas, Los Angeles, CA, for amicus curiae North Dakota Association for Justice.

**Jensen, Justice.**

[¶1]    Dr. Allen Booth and St. Alexius Medical Center appeal from a district court judgment finding North Dakota's noneconomic damages cap in medical malpractice cases unconstitutional.  Dr. Booth and St. Alexius also argue the district court erred in denying a motion for a new trial.  We reverse in part, affirm in part, and remand for a reduction of the award of noneconomic damages.

I.

[¶2]    On May 29, 2012, Chenille Condon gave birth to a child at St. Alexius Medical Center.  Within hours, Condon complained about chest discomfort and shortness of breath.  A pulmonary embolism was suspected and testing was ordered in an effort to diagnose the issue.  Testing revealed multiple pulmonary nodules in Condon's mediastinum.  Condon was eventually referred to Dr. Booth for a mediastinoscopy for the purpose of collecting a larger tissue sample.  The larger tissue sample was necessary for a definitive diagnosis.

[¶3]    Not long into the procedure, an injury occurred to Condon's right innominate artery, resulting in life-threatening bleeding.  Dr. Booth called for the assistance of a surgeon, and they repaired the injured vessel.  After surgery, Condon was placed in intensive care where she had a stroke.  The stroke was related to the injury that occurred during surgery.  Condon underwent rehabilitation for several months.

[¶4]    Condon filed a medical malpractice claim against Dr. Booth.  After nine days of proceedings, the jury returned a verdict finding negligence and awarding Condon $265,000 in past economic loss, $1.735-million in future economic loss, $150,000 in past noneconomic loss, and $1.350-million in future noneconomic loss.

[¶5]    Dr. Booth sought a reduction of noneconomic damages under N.D.C.C. § 32-42-02, the noneconomic damages cap in medical malpractice actions, and a reduction

of the past economic damages pursuant to the collateral-source rule, N.D.C.C. § 32-03.2-06. Condon opposed the reductions and challenged the constitutionality of N.D.C.C. § 32-42-02. The district court granted Dr. Booth's motion with regard to the collateral-source reduction and, after finding N.D.C.C. § 32-42-02 unconstitutional on equal-protection grounds, denied the remainder of Dr. Booth's motion.

[¶6] Dr. Booth also sought a new trial or, in the alternative, a reduction in the verdict. The district court denied the motion for a new trial, but granted the request to reduce the past-economic-loss award to $150,000.

## II.

[¶7] Dr. Booth argues the district court erred in holding N.D.C.C. § 32-42-02 to be unconstitutional. In determining whether a statute is constitutional, we have stated:

> Whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution. The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination. This Court exercises the power to declare legislation unconstitutional with great restraint. Under N.D. Const. art. VI, § 4, this Court shall not declare a legislative enactment unconstitutional unless at least four of the members of the court so decide.

*Teigen v. State*, 2008 ND 88, ¶ 7, 749 N.W.2d 505 (citations and quotations omitted).

[¶8] "[A]n Act of the legislature is presumed to be correct and valid, and any doubt as to its constitutionality must, where possible, be resolved in favor of its validity." *S. Valley Grain Dealers Ass'n v. Bd. of Cty. Comm'rs*, 257 N.W.2d 425, 434 (N.D. 1977). "A statute enjoys a conclusive presumption of constitutionality unless it is clearly shown that it contravenes the state or federal constitution." *Richter v. Jones*, 378 N.W.2d 209, 211 (N.D. 1985).

[¶9] Article I, § 21, N.D. Const., has long been "viewed as our state constitutional guarantee of equal protection under the law." *Matter of Adoption of K.A.S.*, 499

2

N.W.2d 558, 563 (N.D. 1993). Under N.D. Const. art. I, § 21, not all legislative classifications are unlawful. This Court reviews the lawfulness of legislative classifications under three separate standards of review explained below.

[¶10] The standard of review of a question under equal-protection analysis is dependent on the type of classification. *Hanson v. Williams Cty.*, 389 N.W.2d 319, 323 (N.D. 1986). When a classification involves a "fundamental interest" or is "inherently suspect," we will analyze these classifications under strict scrutiny. *Id.* When there is "an important substantive right" involved in the classification, an intermediate standard of review is applied. *Id*. at 325. Lastly, if there is no fundamental or important substantive interest involved, we will consider the classification under a rational basis standard, where the legislation will be sustained unless it is "patently arbitrary and bears no rational relationship to a legitimate government interest." *Id*. at 323. This level of scrutiny is generally applied when "statutory classifications [] involve economic or social matters and do not deprive a class of plaintiffs from access to the courts." *Bismarck Pub. Sch. Dist. 1 v. State*, 511 N.W.2d 247, 257 (N.D. 1994).

### III.

[¶11] In *Arneson v. Olson*, this Court held a previous statutory damage cap of $300,000 in medical malpractice actions violated equal protection under the intermediate level of scrutiny. 270 N.W.2d 125, 135-36 (N.D. 1978). The legislative goals of the prior statute included the availability of competent medical and hospital services at reasonable costs, the elimination of the expenses involved in non-meritorious malpractice claims, the allowance of adequate compensation for patients with meritorious claims, and the encouragement of physicians to practice medicine in North Dakota. *Id.* at 127. We concluded there was not a sufficiently close correspondence between those goals and the statutory classification treating seriously injured victims of medical negligence different than other victims of medical negligence.

3

[¶12]  Section 32-42-02, N.D.C.C., the damage cap currently before this Court, reads:

> With respect to a health care malpractice action or claim, the total amount of compensation that may be awarded to a claimant or members of the claimant's family for noneconomic damage resulting from an injury alleged under the action or claim may not exceed five hundred thousand dollars, regardless of the number of health care providers and other defendants against whom the action or claim is brought or the number of actions or claims brought with respect to the injury.  With respect to actions heard by a jury, the jury may not be informed of the limitation contained in this section.  If necessary, the court shall reduce the damages awarded by a jury to comply with the limitation in this section.

Condon argues N.D.C.C. § 32-42-02 is virtually identical to the damage cap invalidated in *Arneson*.  However, there are fundamental distinctions.  The *Arneson* cap limited a plaintiff's entire recovery to a maximum of $300,000 for all damages incurred.  Under N.D.C.C. § 32-42-02, there is no limit on the amount of damages a jury may award for economic damages such as future medical expenses or loss of wages.  The *Arneson* Court was primarily concerned about the damage cap preventing injured individuals from recovering an amount that would satisfy their medical bills. *See Arneson*, 270 N.W.2d at 135-36.  Because N.D.C.C. § 32-42-02 does not limit economic damages, the recovery of medical bills is not an issue under the current damage cap.

[¶13]  Regardless of the distinctions between the prior and current damage caps, N.D.C.C. § 32-42-02 does limit recovery in a personal injury action.  We have repeatedly recognized the right to recover for personal injuries is an important substantive right subject to the intermediate standard of equal-protection analysis. *Larimore Pub. Sch. Dist. No. 44 v. Aamodt*, 2018 ND 71, ¶ 49, 908 N.W.2d 442; *Olson v. Bismarck Parks & Recreation Dist.*, 2002 ND 61, ¶ 17, 642 N.W.2d 864; *Bouchard v. Johnson*, 555 N.W.2d 81, 87-88 (N.D. 1996); *Hanson*, 389 N.W.2d at 328*; Arneson*, 270 N.W.2d at 135-36.  The intermediate level of scrutiny applies to our analysis of the damage cap in N.D.C.C. § 32-42-02 and requires a close correspondence between the statutory classification and legislative goals.

4

[¶14]   The legislature enacted N.D.C.C. § 32-42-02 in 1995 after a five-year study by a task force created to analyze and make recommendations regarding improvements to North Dakota's health care system.  The goals of the task force were to (1) increase access; (2) control costs; and (3) to maintain or increase quality of health care in the state.  Initially, the recommendation was to cap noneconomic damages at $250,000, but was then changed to $500,000 to "provide more equity" for seriously injured individuals who did not have significant wage losses to recoup.  There was also testimony suggesting the goal of the cap was to stabilize the risk for insurance providers which would potentially have a beneficial effect on premiums.  The operative question is whether the classification created by N.D.C.C. § 32-42-02 closely corresponds to these legislative goals.

[¶15]   Many of the issues with the *Arneson* cap are also present in the current cap.  The legislative history of N.D.C.C. § 32-42-02 does not provide evidence of extreme damages consistently being awarded in medical malpractice cases or skyrocketing malpractice insurance rates.  Section 32-42-02, N.D.C.C., is supported by the general goals of the health care task force and testimony suggesting benefits to insurance rates may result from the cap.  Further, many states that have enacted similar damage caps have created exceptions for egregious cases, Mich. Comp. Laws § 600.1483 (increase in the cap for severe injuries); tied the cap to average wages, Idaho Code Ann. § 6-1603 (cap may increase or decrease based on the average annual wage); or revisited the amount of the cap on a regular basis, Wis. Stat. Ann. § 893.55 (damage cap revisited biannually).

[¶16]   We conclude there is a close correspondence between the damage cap at issue in this case and legitimate legislative goals to satisfy the intermediate level of scrutiny under N.D. Const. art. I, § 21.  In *Arneson*, we cited the "drastic limitation on recovery" that a $300,000 cap on all damages in medical malpractice cases represented in finding the cap to be unconstitutional.  270 N.W.2d at 136.  Here, the damage cap is not nearly as drastic.  Section 32-42-02, N.D.C.C., does not prevent

5

seriously injured individuals from being fully compensated for any amount of medical care or lost wages. Instead, injured individuals are prevented from receiving more abstract damages in excess of $500,000. The legislative goals of the *Arneson* cap and the cap under N.D.C.C. § 32-42-02 are similar, but the effect on potential recovery for injured individuals is not. We therefore conclude the damage cap in N.D.C.C. § 32-42-02 does not violate the equal-protection provisions of N.D. Const. art. I, § 21 and is not unconstitutional.

IV.

[¶17] Dr. Booth argues the district court erred in not ordering a new trial because there were procedural irregularities, excessive damages, insufficient evidence to support the damages awarded, and prejudicial errors of law that occurred at trial. "A district court's decision whether to grant or deny a new trial under N.D.R.Civ.P. 59(b) rests entirely within its discretion, and our review of a denial of a new trial motion is limited to deciding whether the court manifestly abused its discretion." *Carroll v. Carroll*, 2017 ND 73, ¶ 9, 892 N.W.2d 173. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

A.

[¶18] Dr. Booth argues the district court erred in finding Condon established proper foundation for admission of the life care plan. Dr. Booth asserts the testimony of Dr. Andrews was too speculative to be considered by a jury. "[F]or a plaintiff to recover for future medical services, there must be substantial evidence to establish with reasonable medical certainty that such future medical services are necessary." *Erdmann v. Thomas*, 446 N.W.2d 245, 247 (N.D. 1989). Testimony from a physician that a plaintiff's medical condition is permanent and would worsen is sufficient to establish foundation for future medical expenses. *South v. National R. R. Passenger Corp.*, 290 N.W.2d 819, 842 (N.D. 1980).

6

[¶19] Here, while Dr. Andrews did refer to the plan as a recommendation, Dr. Andrews also testified he could give opinions about Condon's injury to a reasonable medical probability. Dr. Andrews went on to testify he had reviewed the life care plan and the recommendations contained were "medically necessary." Because there is testimony from an expert indicating Condon's future medical care recommended by the life care plan was necessary, the district court did not err in admitting the evidence and did not abuse its discretion by failing to order a new trial.

B.

[¶20] Dr. Booth argues the district court erred in finding Condon laid proper foundation for prior medical expenses. "Evidence of medical expenses can be admitted without expert medical opinion that the expenses were necessitated by the defendant's conduct . . . ." *Schutt v. Schumacher*, 548 N.W.2d 381, 382-83 (N.D. 1996). Here, Condon testified she reviewed the medical bills and the bills were related to her stroke. This is proper foundation under *Schutt,* and the district court did not err in admitting the evidence and did not abuse its discretion by failing to order a new trial.

C.

[¶21] Dr. Booth argues Condon's counsel's repeated incidents of misconduct entitle him to a new trial. While Dr. Booth concedes none of these incidents would suffice as a basis for a new trial independently, he asserts that the totality-of-the-misconduct should result in a new trial. The alleged misconduct consists of asking impermissible questions of witnesses, inappropriate comments, and responding inappropriately to objections.

[¶22] New civil trials are rarely granted on the basis of attorney misconduct. *Fox v. Bellon*, 136 N.W.2d 134, 139-40 (N.D. 1965). When considering claims of prejudicial misconduct, courts consider the nature of the comments the jury heard, their probable effect on the jury in the context of the entire trial, and the district

7

court's instructions to the jury. *Holte v. Carl Albers, Inc.*, 370 N.W.2d 520, 527 (N.D. 1985). Here, the jury was given an instruction stating:

> An attorney is an officer of the Court. It is an attorney's duty to present evidence on behalf of a client, to make proper objections, and to argue fully a client's cause. However, the argument or other remarks of an attorney . . . must not be considered by you as evidence.
>
> If counsel or I have made any comments or statements concerning the evidence which you find are not supported by the evidence, you should disregard them and rely on your own recollection or observation.
>
> If counsel has made any statements as to the law which is not supported by these instructions, you should disregard those statements.

[¶23] Dr. Booth's counsel reminded the jury of their duty multiple times. The district court also analyzed the effects of the alleged misconduct independently and collectively. The court was in a better position to determine the effects of the alleged misconduct and found any misconduct did not "rise to the level of a fundamental defect or occurrence in the proceedings." The court did not abuse its discretion by failing to order a new trial based on misconduct of Condon's counsel.

D.

[¶24] Dr. Booth argues the district court abused its discretion in denying a new trial on grounds the court inappropriately excluded relevant evidence about Condon. Dr. Booth asserts that limiting evidence regarding Condon's prior personal issues did not allow the jury an accurate account of Condon's pre-stroke life.

[¶25] Under N.D.R.Ev. 401, relevant evidence means evidence that reasonably and actually tends to prove or disprove any fact that is of consequence to the determination of an action. Relevant evidence is generally admissible. N.D.R.Ev. 402. A district court has discretion to determine whether evidence is relevant, and its decision will not be overturned on appeal absent an abuse of discretion. *Estate of Gassmann*, 2015 ND 188, ¶ 12, 867 N.W.2d 325. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

8

undue delay, waste of time, or needless presentation of cumulative evidence. N.D.R.Ev. 403. "A district court has discretion to balance the probative value of proffered evidence against the dangers enumerated in N.D.R.Ev. 403," and this Court reviews that determination under the abuse-of-discretion standard. *Gassmann*, at ¶ 12.

[¶26] Dr. Booth sought to introduce evidence concerning Condon's prior substance abuse and domestic issues. Condon's prior substance abuse and domestic issues were irrelevant to whether Dr. Booth was negligent. However, the information was relevant to damages incurred because it tended to make a fact of consequence (the damages sought) less likely to be accurate because there were barriers to Condon remaining continually employed. That being said, the district court noted N.D.R.Ev. 403 allows evidence to be excluded if unduly prejudicial. Here, there was a risk the jury would make judgments about Condon based on prior substance abuse and chaotic home life, instead of focusing on whether the doctor was negligent. Further, limited questioning about substance abuse and domestic problems was allowed when Condon or witnesses opened the door to these issues through their testimony. The district court did not abuse its discretion by excluding the evidence or by failing to order a new trial based on the exclusion of substance abuse and domestic issues.

E.

[¶27] Dr. Booth argues the district court erred in allowing neuropsychologist Dr. Rodney Swenson to provide medical-opinion testimony. Dr. Booth asserts Dr. Swenson's testimony concerned an area beyond his area of expertise because he does not have a medical degree, and this error entitles him to a new trial.

[¶28] Dr. Swenson testified regarding Condon's MRI. Dr. Swenson is a clinical neuropsychologist who regularly reviews MRI's as part of his profession. Expert testimony is admissible whenever specialized knowledge will assist the trier of fact. *Kluck v. Kluck*, 1997 ND 41, ¶ 7, 561 N.W.2d 263. "Whether a witness is qualified as an expert and whether the testimony will assist the trier of fact are decisions largely

9

within the sound discretion of the trial court." *Id.* A decision to admit expert testimony is reviewed for abuse of discretion only. *Id.* A trial court "does not abuse its discretion by admitting expert testimony whenever specialized knowledge will assist the trier of fact, even if the expert does not possess a particular expertise or specific certification." *Myer v. Rygg*, 2001 ND 123, ¶ 15, 630 N.W.2d 62. Rule 702, N.D.R.Ev., "envisions generous allowance of the use of expert testimony if the witness is shown to have some degree of expertise in the relevant field." *Kluck*, at ¶ 7. Rule 702, N.D.R.Ev., "does not require licensure in a particular field" to qualify as an expert. *Kluck* at ¶ 9. Instead, it "recognizes it is the witness's actual qualifications that count by providing that an expert can be qualified by knowledge, skill, experience, training, or education." *Myer*, at ¶ 14.

[¶29] Here, Dr. Swenson had experience analyzing MRI's and his opinion would have been helpful to the trier of fact with regard to the effects of Condon's stroke. Dr. Swenson's lack of a medical degree goes to the weight the trier of fact assigns to the testimony, but does not make the testimony inadmissible. Dr. Booth questioned Dr. Swenson's credentials on cross-examination and also introduced his own expert to contradict Dr. Swenson. The jury was then able to give whatever weight they believed appropriate to the testimony. The district court did not err in allowing Dr. Swenson to provide opinion testimony and did not abuse its discretion in failing to order a new trial.

F.

[¶30] Dr. Booth argues there is insufficient evidence to support the jury's verdict and that the verdict is excessive. A court should not disturb a jury's damages verdict unless it is so excessive or inadequate as to be without support in the evidence. *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 753 (N.D. 1989). In determining the sufficiency of the evidence to support a jury's award of damages, the court must view the evidence in the light most favorable to the verdict. *Olmstead v. First Interstate Bank*, 449 N.W.2d 804, 807 (N.D. 1989). Where the verdict is "reasonably within the

scope of the evidence presented and the instructions of the court[,]" the plaintiff is entitled to have judgment entered upon the jury's verdict. *Neidhardt v. Siverts*, 103 N.W.2d 97, 101 (N.D. 1960).

[¶31]   Here, the jury heard testimony about Condon's medical bills and potential lost wages.   The jury also heard testimony regarding the effects the incident had on Condon's day-to-day life.   While the verdict is large, the damages are within the range of the evidence the jury heard at trial.   The damages are also reasonable considering the testimony evidencing the devastating effect the injury had on Condon's life.

[¶32]   Dr. Booth also motioned the district court for a remittitur.   This Court has previously stated:

> If the size of the verdict in relation to the injury sustained is so excessive as to demonstrate to the court that the jury has been misled by passion or prejudice in determining the amount of damages, the trial court should grant a new trial or reduce the verdict, and, in a case where it appears that the passion and prejudice affected only the amount of damages allowed, and did not influence the findings of the jury on other issues in the case, the error resulting from the excessive damages may be corrected either by the trial court or by this court on appeal by ordering a reduction of the verdict in lieu of a new trial, or by ordering that a new trial [b]e had unless the party in whose favor the verdict was given remit the excess of damages.

*Neidhardt*, 103 N.W.2d at 100.

[¶33]   Here, as discussed above, the verdict was substantial, but not excessive.   The damages awarded were within the range of the evidence presented, and Condon's life was significantly affected by what the jury determined to be medical negligence.   The verdict was not so excessive or inadequate as to be without support in the evidence, and the district court did not err in failing to reduce the damages awarded or abuse its discretion by failing to order a new trial.

V.

[¶34] We conclude the damage cap in N.D.C.C. § 32-42-02 does not violate the equal-protection provisions of N.D. Const. art. I, § 21. We reverse the district court's judgment and remand for a reduction in noneconomic damages consistent with N.D.C.C. § 32-42-02. We affirm the district court's denial of Dr. Booth's request for a new trial.

[¶35] Jon J. Jensen
Daniel J. Crothers

I concur only in the result.
Jerod E. Tufte

Donovan J. Foughty, D.J.
Gerald W. VandeWalle, C.J.

[¶36] The Honorable Donovan J. Foughty, D.J., sitting in place of McEvers, J., disqualified.