# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 153

| | |
|---|---|
| Michael Davis and Kimberly Davis, | Plaintiffs and Appellees |
| v. | |
| Mercy Medical Center d/b/a CHI St. Alexius Health Williston; and David Keene, M.D., | Defendants and Appellants |
| and | |
| and Cherise Norby, N.P., | Defendant |

### No. 20220325

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Benjamen J. Johnson, Judge.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Opinion of the Court by Crothers, Justice.

Jed Kurzban (argued) and Lauren Gallagher (appeared), Coral Gables, FL, and Mark V. Larson (appeared) and Anders Larson (on brief), Minot, ND, for plaintiffs and appellees.

Tracy V. Kolb (argued), Bismarck, ND, and Rodger A. Hagen (appeared) and Julia J. Nierengarten (appeared), Minneapolis, MN, for defendants and appellants Mercy Medical Center d/b/a CHI St. Alexius Health Williston and David Keene, M.D.

Jeffrey S. Weikum (on brief), Bismarck, ND, for amicus curiae North Dakota Association for Justice.

**Davis, et al. v. Mercy Medical Center, et al.**
**No. 20220325**

**Crothers, Justice.**

[¶1]   Mercy Medical Center d/b/a CHI St. Alexius Health Williston; and David Keene, M.D. (Defendants), appeal from an amended judgment awarding Michael and Kimberly Davis $1,660,000 in damages and $204,973.31 in costs and disbursements for medical malpractice relating to Michael Davis' kidney failure. The Defendants also appeal from an order denying their motion for judgment as a matter of law. We affirm in part, reverse in part and remand.

I

[¶2]   In February 2016, Michael Davis visited CHI in Williston. Cherise Norby, N.P., treated Davis for flu-like symptoms. A blood test indicated Davis had an elevated white blood cell count. Davis returned to Norby in October 2016, complaining of frothy urine. Blood and urine tests showed Davis had an elevated white blood cell count and protein and blood in his urine. Norby referred Davis to a urologist for further evaluation. After a January 2017 examination, the urologist found no urological explanation for Davis' abnormal test results.

[¶3]   In June 2017, Davis followed up with Norby. Davis' lab results showed the blood and protein levels in his urine had tripled since the earlier tests in October 2016 and January 2017. Davis returned to the urologist, who again found no urological explanation for Davis' abnormal test results.

[¶4]   On September 14, 2017, Davis went to the emergency room at Holy Rosary Healthcare in Miles City, MT, complaining of hand and leg pain. A blood test indicated elevated white blood cells, elevated creatinine, and low estimated glomerular filtration rate (eGFR), which measures how well the kidneys filter blood. Holy Rosary recommended Davis follow up with his primary care provider due to the abnormal lab results.

[¶5]   On September 15, 2017, Davis followed up with CHI as recommended by Holy Rosary. From September 15 to September 25, Davis was treated by Dr.

David Keene three times. Davis' blood test results continued to show an elevated white blood cell count. Dr. Keene's notes acknowledged Davis had abnormal lab results since 2016, but Dr. Keene did not order a urinalysis or refer Davis to a nephrologist for further examination.

[¶6] In March 2018, Davis saw Dr. Bruce Pugatch at CHI. Davis had elevated blood pressure and his urine test showed elevated creatinine levels. As a result of Davis' elevated creatinine levels, Dr. Pugatch referred Davis to a nephrologist.

[¶7] On March 29, 2018, Davis had a renal biopsy at Mayo Clinic. The biopsy demonstrated Davis was in kidney failure because of a kidney disease known as IgA nephropathy. On March 4, 2020, Davis received a kidney transplant at age 40.

[¶8] Before his kidney transplant, Michael and Kimberly Davis sued CHI, Norby, and Dr. Keene, alleging they failed to treat signs of kidney disease and timely refer Michael Davis to a nephrologist. Michael and Kimberly Davis alleged they suffered damages as a result of the Defendants' delay in treating Michael Davis' kidney disease, which led to kidney failure.

[¶9] At trial, the Davises' expert witness, nephrologist Dr. Bradley Denker, testified IgA nephropathy is treatable, and the earlier you treat it, the better. Dr. Denker testified that if Davis' kidney disease was treated earlier, his kidney failure could have been delayed by approximately 15 years. The Davises presented evidence on past and future medical expenses, and requested over $5,000,000 in damages.

[¶10] The jury found Norby was not at fault in her treatment of Michael Davis. The jury found Dr. Keene was at fault in his treatment of Davis, and Dr. Keene's fault was a proximate cause of the Davises' injuries. The jury awarded Michael and Kimberly Davis $1,660,000 in damages. The district court awarded the Davises $5,614.12 in interest and $204,973.31 in disbursements and costs for a total judgment of $1,870,587.43.

[¶11] The Defendants moved for a post-trial judgment as a matter of law under N.D.R.Civ.P. 50, arguing the Davises did not present sufficient evidence establishing Dr. Keene's failure to refer Michael Davis to a nephrologist proximately caused Davis' injuries. The Defendants also claimed the Davises did not present adequate evidence to support the jury's award of damages. The district court denied the motion and upheld the jury's verdict.

II

[¶12] The Defendants argue the district court erred by denying their N.D.R.Civ.P. 50 motion for judgment as a matter of law. They claim the Davises failed to present sufficient evidence relating to proximate cause and damages.

[¶13] Rule 50, N.D.R.Civ.P., governs judgments as a matter of law. Under N.D.R.Civ.P. 50(a)(1), a district court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." A party moving for judgment as a matter of law is claiming the evidence is insufficient to create a question of fact for the jury. *Pavlicek v. Am. Steel Sys., Inc.*, 2019 ND 97, ¶ 7, 925 N.W.2d 737. Whether evidence is sufficient to create a question of fact for the jury is a question of law to be decided by the district court. *Id.*

[¶14] This Court has explained the standard of review for a Rule 50 motion for judgment as a matter of law:

"The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In considering this motion, the trial court must apply a rigorous standard with a view toward preserving a jury verdict, and so must we in our review on appeal. In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable

3

inferences from that evidence which support the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal."

*Pavlicek*, 2019 ND 97, ¶ 8 (quoting *Bjorneby v. Nodak Mut. Ins. Co.*, 2016 ND 142, ¶ 7, 882 N.W.2d 232).

## A

[¶15] The Defendants assert the Davises did not establish Dr. Keene's failure to refer Michael Davis to a nephrologist in September 2017 proximately caused Michael Davis' kidney failure and need for a kidney transplant.

[¶16] To establish a prima facie case of professional negligence, a plaintiff must produce expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the plaintiff's injury. *Johnson v. Mid Dakota Clinic, P.C.*, 2015 ND 135, ¶ 11, 864 N.W.2d 269. "A proximate cause is a cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred." *Id.* at ¶ 17. The term "proximate cause" contemplates "an immediate cause which in natural and probable sequence produces the injury complained of" and expressly excludes any assignment of legal liability "based on speculative possibilities, or circumstances and conditions remotely connected with the events leading up to the injury." *Id.*

[¶17] The Davises claim Dr. Keene's failure to refer Michael Davis to a nephrologist produced his injury: kidney failure and a kidney transplant. The Davises' expert witness, nephrologist Dr. Denker, testified primary care providers are "the primary source of referrals to a specialty clinic." Dr. Denker testified patients are referred to him "with nothing more than blood and protein in the urine." He testified he often sees patients with symptoms such as frothy urine, protein in the urine, blood in the urine, elevated creatinine, and high blood pressure. He testified kidney disease does not mean kidney failure, and explained the difference between kidney disease and kidney failure:

4

"So let me start with kidney failure. That's when the absolute number of those [kidney] filters has gotten to a critically low level, so now the body can't maintain balance. You're retaining things, fluids, electrolytes that could be dangerous, and the kidneys are a vital organ. You're going to die unless something is done to treat kidney failure. And to treat kidney failure, we have a couple of choices, two types of dialysis and kidney transplantation. None of those are cures, or even the transplant's not a cure. It's a treatment for really what is kidney failure.

"Kidney disease is anything from the recognition of protein in the urine alone that qualifies as kidney disease, even with normal kidney function, as Mike did back in October of 2016.

"So kidney disease is very loosely defined as any abnormality in the urine originating from those filters, any significant reduction in kidney function, or anatomic abnormality of the kidney. That's the official definition of kidney disease."

[¶18] Dr. Denker testified the kidney disease IgA nephropathy "is highly treatable. And like with most conditions, you do better when it's recognized early." Michael Davis' treating physicians, Dr. Mireille El Ters and Dr. Ladan Zand, and the Defendants' expert witness, Dr. S. Smiley Thakur, all testified IgA nephropathy is treatable.

[¶19] Dr. Denker testified the earlier you treat kidney disease, the less complications you get from it. Dr. Denker testified "[e]arlier treatment could have converted [Michael Davis' kidney disease] to a less aggressive disease." He gave his opinion that Michael Davis' kidney failure and need for a transplant would have been delayed for years:

"Q. Within a reasonable degree of medical probability, if Mike's kidney disease had been recognized and treated in September of 2017 by Dr. Keene, could Mike's kidney disease and kidney failure have been treated and the transplant at the age of 40 been prevented?
. . .
[Dr. Denker]: Yes. I mean, the earlier the intervention, the longer you would have to delay the need for dialysis or transplant.

5

. . .

Q. Within a reasonable degree of medical probability, if Michael had been treated earlier in his course at [Mercy Medical Center], would it have made a difference in Michael's ultimate outcome of kidney failure?

. . .

[Dr. Denker]: Yes. And I think we touched on that. More likely than not I would have hoped that this process [kidney failure] wouldn't have started for another 15 years."

[¶20] Dr. Denker testified Michael Davis should have been referred to a nephrologist before March 2018 on the basis of his abnormal blood and urine test results. Dr. Denker gave his opinion Michael Davis' kidney failure and transplant would have been avoided for many years if he had received treatment for his kidney disease earlier. Viewing the evidence in the light most favorable to the verdict, a jury could have found Dr. Keene's failure to refer Michael Davis to a nephrologist was the proximate cause of Davis' injuries. The district court did not err in denying the Defendants' motion for judgment as a matter of law on the issue of proximate cause.

B

[¶21] The Defendants argue the Davises failed to present sufficient evidence to support the jury's award of damages relating to past medical expenses and future economic damages.

1

[¶22] A court will not disturb a jury's damages verdict unless the verdict is so excessive or inadequate as to be without evidentiary support. *Condon v. St. Alexius Med. Ctr.*, 2019 ND 113, ¶ 30, 926 N.W.2d 136. In determining whether sufficient evidence supports a jury's award of damages, the court must view the evidence in the light most favorable to the verdict. *Id.*

[¶23] Evidence of medical expenses may be admitted without an expert medical opinion that the expenses were necessitated by the defendant's conduct. *Schutt v. Schumacher*, 548 N.W.2d 381, 382-83 (N.D. 1996). After the medical expenses are admitted upon a showing the evidence is relevant, the

question whether the expenses were incurred because of the defendant's wrongdoing is for the jury to decide. *Id*. at 383.

[¶24] Michael Davis introduced an index of medical bills and insurance payment summaries related to his kidney disease showing he incurred $386,919.04 in medical expenses. Davis testified he reviewed the documents and they accurately reflected the amounts paid for his treatment. Under N.D.R.Ev. 901(a) and (b)(1), a witness may authenticate evidence with "[t]estimony that an item is what it is claimed to be." *State v. Thompson*, 2010 ND 10, ¶ 22, 777 N.W.2d 617.

[¶25] Davis authenticated the medical bills and payment summaries sufficient for the district court to determine the jury could find the documents reflected what Davis purported them to be—documents showing his medical expenses. *See* N.D.R.Ev. 104(a) (district court decides the preliminary question of whether evidence is admissible). The Defendants failed to demonstrate the documents were not genuine, and also had the opportunity through cross examination to establish the exhibits and Davis' testimony did not accurately reflect amounts paid for Davis' treatment. *See State v. Obrigewitch*, 356 N.W.2d 105, 108 (N.D. 1984) (noting that after the admission of authenticated documents, appellant "failed to present any evidence going to the issue of genuineness of the State's exhibits"); *State v. Gibson*, 2015-Ohio-1679, ¶ 45 (Ohio Ct. App.) (explaining "the burden of going forward with respect to authentication shifts to the opponent to rebut the prima facie showing by presenting evidence to the trier of fact which would raise questions as to the genuineness of the document"). The district court did not abuse its discretion admitting the documents with Davis' foundation. N.D.R.Ev. 901(a) and (b)(1).

[¶26] The jury awarded Michael Davis $400,000 for his past economic damages. The amount awarded is more than the $386,919.04 he testified he incurred. Davis has not pointed to anything in the record to support an award of past economic damages exceeding $386,919.04. Instead, the Davises' brief states the $400,000 "is a reasonable number awarded by the jury who likely rounded their award to a simple addable, whole number."

7

[¶27] In *Anderson v. A.P.I. Co. of Minnesota*, 1997 ND 6, ¶ 24, 559 N.W.2d 204 (quoting *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 92 (N.D. 1981)), this Court said:

> "The determination of the amount of damages is in the province of the jury and rests largely in the discretion of the jury. . . . Nevertheless, the jury must determine the compensation to which a party is entitled within reasonable limits, based upon the evidence. If those limits have been exceeded, it is the duty of the court to make a proper reduction or grant a new trial."

Like in *Anderson*, here we deem Michael Davis' failure to direct our attention to any record evidence supporting the jury's award of $400,000 in past economic damages a concession no evidence exists. Therefore, as a matter of law, we reduce the jury's award of $400,000 in past economic damages to $386,919.04. *See Anderson*, at ¶ 25 (reducing a jury's award of past economic damages when a party failed to offer evidence supporting the full amount of the jury's award). We remand for an appropriate reduction of the jury's award of past economic damages to Michael Davis.

2

[¶28] For a plaintiff to recover damages for future medical services, substantial evidence must establish with reasonable medical certainty that the services are necessary. *Condon*, 2019 ND 113, ¶ 18. Testimony from a doctor that a plaintiff's medical condition is permanent and would worsen is sufficient to establish foundation for future medical expenses. *Id.*

[¶29] The jury awarded Michael Davis $1,100,000 in future economic damages. Loretta Lukens, a life-care planner, prepared a report outlining the medical care and treatment Davis may require in the future and the projected costs of that treatment. Dr. Denker testified the life care plan outlining Davis' future medical care was a "reasonable medical course." Dr. Denker testified Davis likely will need another kidney transplant between the ages of 51 and 57. Dr. Denker testified Davis may need a third kidney transplant between the ages of 62 and 68 "if it's medically appropriate, 25 years from now." Lukens testified the present value of Davis' future medical treatment is nearly

$4,000,000. The jury's future economic damages award is within the range of evidence and is not excessive or inadequate. The district court did not err in denying the Defendants' motion for judgment as a matter of law relating to Michael Davis' future economic damages.

## III

[¶30] The Defendants claim the district court erred by awarding the Davises $204,973.31 in costs and disbursements. They assert the Davises are not the prevailing party and should not have been awarded all of their costs and disbursements.

[¶31] Under N.D.C.C. § 28-26-06, the clerk of the district court shall tax as part of the judgment certain disbursements in favor of the prevailing party. The court has discretion to award costs for or against either party under N.D.C.C. § 28-26-10. "Determining who is a prevailing party for an award of disbursements under N.D.C.C. § 28-26-06 is a question of law, subject to de novo review, while the question of the amount to be allowed for disbursements and costs is one of fact, subject to an abuse of discretion standard." *Carpenter v. Rohrer*, 2006 ND 111, ¶ 34, 714 N.W.2d 804. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned determination. *Sterling Dev. Grp. Three, LLC v. Carlson*, 2015 ND 39, ¶ 17, 859 N.W.2d 414.

[¶32] A prevailing party for purposes of N.D.C.C. § 28-26-06 is based on success on the merits and not the amount of damages awarded. *Carpenter*, 2006 ND 111, ¶ 34. "Generally . . . the prevailing party is the one in whose favor the decision or verdict is rendered and the judgment entered." *Id.* at ¶ 35. "[W]hen opposing litigants each prevail on some issues, there may not be a single prevailing party for whom disbursements may be taxed." *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 49, 730 N.W.2d 841. A prevailing party in a tort action "must prevail at least on the issues of negligence and proximate cause." *Braunberger v. Interstate Eng'g, Inc.*, 2000 ND 45, ¶ 14, 607 N.W.2d 904 (quoting *Andrews v. O'Hearn*, 387 N.W.2d 716, 732 (N.D. 1986)).

[¶33] Here, the Davises did not prevail in their direct tort actions against Norby and CHI; however, they prevailed against Dr. Keene, for whom CHI is vicariously liable. Under N.D.C.C. § 28-26-06, the Davises are entitled to their necessary disbursements against Dr. Keene. Any disbursements related to the Davises' direct claims against Norby or CHI are not allowed to be taxed in the Davises' favor. To the extent the district court allowed those disbursements to be taxed in the Davises' favor, the court erred.

[¶34] The Davises requested $204,973.31 in costs and disbursements, to which the Defendants objected. Despite the Defendants' objection to the Davises' verified statement of costs and disbursements, the district court awarded the Davises all of their requested costs and disbursements without a hearing or explanation. The court's order allowing the Davises' costs and disbursements simply stated, "Having considered the Defendants' objection to . . . Plaintiffs' costs . . ., the Court will not be making any amendments or changes to the amended judgment."

[¶35] Some of the expenses included in the Davises' verified statement were $3,040 for *pro hac vice* admission fees and $5,142.08 for legal research. Those expenses are not authorized by N.D.C.C. § 28-26-06. *See Heng v. Rotech Med. Corp.*, 2006 ND 176, ¶ 37, 720 N.W.2d 54 (concluding "electronic legal research fees are a component of attorney fees and cannot be separately taxed as costs"). The district court erred in awarding the Davises *pro hac vice* admission fees and legal research fees as part of their costs and disbursements.

[¶36] The Davises' statement of costs and disbursements included a $16,370.23 expense for medical records retrieval. The parties agreed to share the costs of obtaining Michael Davis' medical records. According to the exhibits submitted with the Davises' verified statement, the total amount for medical records retrieval was $9,009.14, with each party paying $4,504.57. It is not known whether the $16,370.23 requested by the Davises included the $9,009.14 or was an additional amount.

[¶37] We review the amounts awarded by the district court for disbursements and costs under N.D.C.C. §§ 28-26-06 and 28-26-10 for an abuse of discretion.

10

*Carpenter*, 2006 ND 111, ¶ 34. Because the court awarded disbursements not authorized by N.D.C.C. § 28-26-06 and allowed other costs without explanation, the court abused its discretion. We reverse the Davises' award of disbursements and costs and remand for further proceedings.

IV

[¶38] We have considered the parties' remaining arguments and conclude they are either without merit or not necessary to our decision. The amended judgment is affirmed in part, reversed in part and remanded.

[¶39] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr